Docket No. 13-56314

In the

# United States Court of Appeals

for the

# <u>Ninth Circuit</u>

MOHAMMAD ALI TALAIE, *an individual on behalf of themselves and all others similarly situate*d; ROSA W. TALAIE, *an individual on behalf of themselves and all others similarly situated,*

*Plaintiffs - Appellants,*

v.

WELLS FARGO BANK, N.A., and U.S. BANK, National Association, as trustee,

*Defendants - Appellees.*

APPEAL FROM THE U.S. DISTRICT COURT
For the Central District of California, Los Angeles
Case No. 2:12-cv-04959-DMG-AGR The Honorable Dolly M. Gee, Presiding

# APPELLANTS' REPLY BRIEF

Lenore L. Albert, Esq. SBN 210876
Law Offices of Lenore Albert
7755 Center Avenue, Suite #1100
Huntington Beach, CA 92647
Ph: 714-372-2264  Fx: 419-831-3376
Email: lenalbert@interactivecounsel.com
*Counsel for Plaintiffs-Appellants, Mohammad Ali Talaie and Rosa W. Talaie*

## TABLE OF CONTENTS

I.   INTRODUCTION ......................................................................1

II.  FURTHER ARGUMENT IN REPLY TO RESPONDENT'S BRIEF.........2

     A. The MBS Trust Does Not Identify the Borrower's Loan As Part
        of the Loan Pool so it Does Not Demonstrate that the
        Borrower's Loan Was Transferred to the MBS Trust in 2006 ..........2

     B. There is a Presumption That the Transfer Occurred in 2012 on
        the Grounds that A Writing is Presumed to Have Been Truly
        Dated, And the ADOT Evidencing the Transfer Was Dated
        February 2012 ...................................................................3

     C. The Allegation was That the Defendants Lacked Standing to
        Foreclose with Regard to the Cancellation of Instruments and
        Quiet Title Claim ...............................................................5

     D. Tender Does Not Apply Because the Attempt To Improperly
        Transfer Was Void..............................................................7

     E. Cal Civ Code § 2934 is the Proper Inquiry, Not Cal Civ Code §
        2932...............................................................................8

     F. The Prospectus and PSA of the MBS Trust are Merely Proof
        that Defendant Misrepresented the Transfer or the Ability to
        Modify Borrower's Loan ......................................................9

     G. Glaski is Controlling Precedent in California ...................................10

     H. The Assignment Took Place After the MBS Trust Closed so it
        Was Void. Thus, the Borrowers Had the Right to Challenge
        Defendants' Standing to Record a Notice of Sale and Proceed
        to Foreclosure ................................................................12

     I. The Charge-Off of the Second Lien was Placed on the Credit
        Report............................................................................12

     J. Tender Revisited..............................................................16

K. Fraudulent Misrepresentations That Were Actionable Were Alleged in the Complaint ................................................................18

L. Defendants Were the Initial Wrongdoers so the Fact that Plaintiffs Defaulted on the Loan Does not Negate Standing ..............19

III.   CONCLUSION ................................................................................24

IV.   Statement of Related Cases ............................................................26

V.   Certificate of Compliance ...............................................................27

VI.   Certificate of Service .....................................................................28

TABLE OF AUTHORITIES

**Cases**

Alliance Mortgage Co. v. Rothwell (1995) 10 Cal.4th 1226, 1239.......................21

Bank of America v. Daily (1984, Cal App 4th Dist) 152 Cal App 3d 767, ......14, 15

Cockerell v. Title& Ins. Co., 42 Cal. 284, 292-293 (1954)...................................12

Columbia Steel Casting Co. v. Portland GE (9th Cir. 1996) 111 F.3d 1427, 1443 11

Glaski v. Bank of Am., Nat'l Ass'n (2013) 218 Cal.App.4th 1079, 1100 [160 Cal.Rptr.3d 449] ............................................................................................ 7

Lester v. J.P. Morgan Chase Bank (N.D.Cal. 2013) 926 F.Supp.2d 1081, 1093 ..... 8

Lueras v. BAC Home Loans Servicing, LP (2013) 221 Cal.App.4th 49 (Lueras)..20

Nungaray v. Litton Loan Servicing, LP (2011, 2d Dist) 200 Cal App 4th 1499, 2011 Cal App LEXIS 1458. ....................................................................18

Ohlendorf v. Am. Home Mortgage Servicing (E.D.Cal. 2010) 279 F.R.D. 575, 582-583......................................................................................................7, 8

Prestige Ltd. Pshp. v. East Bay Car Wash Partners (In re Prestige Partnership) (2000, 9th Cir Cal) 234 F3d 1108 ........................................................16

Riverisland Cold Storage v Fresno Madera Credit, 55 Cal.4th 1169, 2013...........25

Walker v. Community Bank (1974) 10 Cal 3d 729, 111 Cal Rptr 897 ..................14

West v. American Telephone & Telegraph Co. (1940) 311 U.S. 223, 236-237 .....12

**Statutes**

15 USC § 1641g....................................................................................... ii, 1, 4

15 USC §1641g ............................................................................................... 5

Cal Civ Code § 2924 ........................................................................................ 9

Cal Civ Code § 2934 ........................................................................................ 9

Cal Civ Code § 2934(a)(1) ............................................................................... 6

Cal Civ Code § 2936......................................................................................8, 9

Cal Evid Code § 640 ....................................................................................4, 12

Cal. Civ. Code § 2934a(a)(1) ........................................................................... 6

CCP § 726 .....................................................................................................16

CCP § 726(a) .................................................................................................14

Civ. Code, § 2923.5 ........................................................................................21

Code Civ. proc., § 22 ........................................................................14

Code Civ. Proc., § 726 ................................................................13, 14

Code Civ. Proc., §§ 580a .................................................................12

Fed Rules Evid. § 301 ...................................................................... 4

Fed. Rules Evid. § 302 ..................................................................... 4

**Other Authorities**

Diane E. Thompson, *Foreclosing Modifications: How Servicer Incentives Discourage Loan Modifications* (2011) 86 Wash L. Rev. 755, 777) .................22

## I.    INTRODUCTION

Mr. and Mrs. Talaie appealed because they were duped out of saving their home from yet another unnecessary foreclosure. They were told they qualified for a modification, then they were told the investor refused to modify the loan, information Wells Fargo would have had prior to telling the Talaies they qualified for a modification in the first place.

The only evidence in the record that there were investors was an assignment that occurred in 2012 from Wells Fargo to US Bank, supporting the borrowers' 15 USC § 1641g claim that was dismissed.

Alternatively the borrowers pled that the defendants did not have standing to take their home at foreclosure because the loan was never properly transferred to US Bank's MBS trust, so any purported transfer was void. With the transfer being void, the MBS trust had no right to substitute in a new trustee to foreclose because the MBS trust was not a beneficiary under the deed of trust. Thus, the foreclosing trustee had no right to record a notice of sale and foreclose.

This is not a mere technicality in the nonjudicial foreclosure process requiring tender, it is more accurately characterized as fraud. Thus, tender is not required.

The Opening brief adequately addresses most of the issues addressed in the opposition, so the reply brief is limited to those points where either the issue has been recharacterized or the record has been recasted.

## II.    FURTHER ARGUMENT IN REPLY TO RESPONDENT'S BRIEF

### A. THE MBS TRUST DOES NOT IDENTIFY THE BORROWER'S LOAN AS PART OF THE LOAN POOL SO IT DOES NOT DEMONSTRATE THAT THE BORROWER'S LOAN WAS TRANSFERRED TO THE MBS TRUST

Defendants Wells Fargo Bank and US Bank state that the date of creation of the MBS trust "demonstrated that the subject loans were transferred to U.S. Bank as Trustee on April 1, 2006." [RB 13].  Just because the MBS was created on April 1, 2006 it does not establish that any loan, including Plaintiff's loan, was actually transferred into that MBS trust on April 1, 2006. The fact a MBS trust was created cannot create an inference that Plaintiff's loan was transferred into it because there is no uncontrovertable evidence in the record demonstrating as much. In a footnote on page 13 Respondents' attempt to trace out evidence of transfer by noted ER 109, 104, 106 and SER 392.  However, the Plaintiff's loan is not identified or referenced anywhere on any of these pages. As stated in the opening brief, these Securitization Contracts referred to a Mortgage Loan Schedule which allegedly identified the loans that were supposed to be transferred to the WFHM 2006-W24 trust. However, the Mortgage Loan Schedule was not included in the Securitization Contracts that the defendants offered the court and

2

on which the court relied. Moreover, even if that Schedule would have been offered, and even if it did identify the Talaie loan, this still does not prove the transfer date.

The only way a loan can be transferred to a MBS trust is by following both state law and the procedures in the trust. There was no proof that Wells Fargo followed state law and the procedures in the trust. The Securitization Contracts were merely **roadmaps** as to how that was going to be achieved but not proof in and of itself that the transfer actually occurred.

The proof that it actually occurred, and when it occurred would be a full collateral file and compare the collateral file to the Securitization Contracts at issue. The defendants never provided the collateral file to the court.

B. **THERE IS A PRESUMPTION THAT THE TRANSFER OCCURRED IN 2012 ON THE GROUNDS THAT A WRITING IS PRESUMED TO HAVE BEEN TRULY DATED, AND THE ADOT EVIDENCING THE TRANSFER WAS DATED FEBRUARY 2012.**

In contrast, plaintiff not only alleged that the loan was assigned, if at all, in 2012, but plaintiff also provided the assignment of deed of trust executed in 2012 asserting said transfer to the court. [ER 152]. This assignment is the only document that actually ties Plaintiff's loan to the MBS trust in the entire record.

Defendants contend that "by operation of law" US Bank became the beneficiary under Plaintiff's deed of trust in 2006 without citation to a legal

source. [RB 18]  There is a presumption in California that a writing is presumed to have been truly dated. (Cal Evid Code § 640).

The Federal Rules of Evidence implement state law presumptions in civil cases like this. "In a civil case, state law governs the effect of a presumption regarding a claim or defense for which state law supplies the rule of decision." Fed. Rules Evid. § 302.

Thus, the assignment is presumed to have occurred in February, 2012 because that is when the document evidencing the assignment was dated.

Consequently, the district court erred in failing to apply the presumption first which then placed the burden of proof upon the defendant to show that the assignment did not occur in February 2012. Fed Rules Evid. § 301.

Moreover, even if the district court had properly shifted the burden, defendants "evidence" never adequately rebutted the presumption.  The SEC documents that the defendants provided failed to demonstrate that Mr. and Mrs. Talaie's loan was transferred in 2006 to that MBS trust (the loan was never identified in the trust documents provided).

Thus, the court erred in dismissing the claim with prejudice by finding that 15 USC § 1641g was not enacted when the transfer occurred because it incorrectly concluded the transfer occurred in 2006 based on the record before it.  The 15

4

USC §1641g violation as claimed was plausible demonstrating an error by the district court warranting reversal.

## C. THE ALLEGATION WAS THAT THE DEFENDANTS LACKED STANDING TO FORECLOSE WITH REGARD TO THE CANCELLATION OF INSTRUMENTS AND QUIET TITLE CLAIM

Next, Defendant contends that just because an assignment is not required to be recorded in the County Recorder's office for a deed of trust, that somehow plaintiff borrowers lack standing to complain.

However, as laid out in the Opening brief, only the beneficiary can foreclose and substitute in the trustee. Here, the defendants reasoning only works if the original trustee is the foreclosing trustee. Under these facts, it is not.

The beneficiary was listed as "Wells Fargo Bank, N.A." and the trustee named in the deed of trust was "Chicago Title Insurance Company." [ER 2:213]

The first amended complaint alleged "Wells Fargo Bank, N.A. recorded a Substitution of Trustee naming Wells Fargo Bank, N.A. as the substitute trustee for the deed of trust recorded on October 4, 2005. (Doc. No. 05 3223460)" after the deed of trust was recorded. [ER 2:32]

Consequently, Wells Fargo Bank, N.A. had the right to foreclose as trustee but Fidelity National Title Insurance Company executed the Notice of Sale as the foreclosing trustee on May 17, 2012, instead. [ER 150]

5

"The trustee under a trust deed upon real property . . . may be substituted by the recording . . . of a substitution executed and acknowledged by . . . all of the beneficiaries under the trust deed or their successors in interest." Cal Civ Code § 2934(a)(1). Here, the beneficiary listed on the original Note was Chicago Trustee Insurance Company. Then Wells Fargo became the trustee by signing a Substitution of Trustee document. To comply with Civil Code section 2934a(a)(1), Wells Fargo (or its agent) should have signed the Substitution of Trustee document as the beneficiary of the original Note over to Fidelity National Title Company. Instead, no Substitution of Trustee document can be found in the record. Thus, Plaintiff made a colorable allegation that the Notice of Sale document was executed in violation of Civil Code section 2934a.

If a Notice of Sale is fraudulent because there was no proper substitution of the foreclosing trustee, then a nonjudicial foreclosure sale based on that notice is void. *See, Pro Value Props., Inc. v. Quality Loan Serv. Corp.* (2009) 170 Cal.App.4th 579, 583 [88 Cal.Rptr.3d 381] (failure to comply with CAL. CIV. CODE § 2934a(a)(1) renders subsequent nonjudicial foreclosure sale void). *See also*, *Miller v. Wells Fargo Bank* (N.D.Cal. May 30, 2012), No. C-12-2282 EMC, 2012 U.S. Dist. LEXIS 74966, 2012 WL 1945498, at *2, *4 (Chen, J.) (granting preliminary injunction preventing foreclosure sale because the plaintiff was likely

to prevail on claim that foreclosure was improper due to fraudulent substitution of trustee).

Such claims are in accord with current California law. *Glaski v. Bank of Am., Nat'l Ass'n* (2013) 218 Cal.App.4th 1079, 1100 [160 Cal.Rptr.3d 449] (foreclosure sale is void if the foreclosing entity lacked the authority to foreclose on the property).

Similarly, courts have concluded that a plaintiff can state a wrongful foreclosure claim if the defendants were not proper parties to foreclose in the first place due to allegedly fraudulent assignments prior to the foreclosure sale. *See, e.g., Ohlendorf v. Am. Home Mortgage Servicing* (E.D.Cal. 2010) 279 F.R.D. 575, 582-583; *see also Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1155 [121 Cal.Rptr.3d 819] (allegation that wrong party initiated foreclosure places a case outside the bar against legal challenges to a foreclosing entity's right to carry out nonjudicial foreclose).

Thus the allegation applies in the UCL context in addition to the cancellation of documents and quiet title claim because said wrongful foreclosure would be an unlawful, unfair and/or fraudulent business practice.

D. **TENDER DOES NOT APPLY BECAUSE THE ATTEMPT TO IMPROPERLY TRANSFER WAS VOID**

No tender applies because the notice of sale was void. Moreover, plaintiff is entitled to punitive damages. *See, Glaski v. Bank of Am., Nat'l Ass'n*, *supra*, 218

7

Cal.App.4th at page 1100 ("Tender is not required where the foreclosure sale is void . . . , such as when a plaintiff proves that the entity lacked the authority to foreclose on the property."). *Also see*, *Lester v. J.P. Morgan Chase Bank* (N.D.Cal. 2013) 926 F.Supp.2d 1081, 1093 ("where a plaintiff alleges that the entity lacked authority to foreclose on the property, the foreclosure sale would be void . . . . The tender rule does not apply to a void . . . foreclosure sale.") (citations omitted)).

Regardless of California law on assignments, California law required the trustee who was foreclosing to be substituted into the chain of title by way of a Substitution of Trustee document. Although the beneficiary did not need to be recorded, it needed to be recorded if the new beneficiary wanted to substitute in its own trustee. Here the record does not contain a substitution of trustee document by either Wells Fargo or the MBS trustee substituting in either Default Resolution Network or Fidelity National Title as the new trustee.

### E.  CAL CIV CODE § 2934 IS THE PROPER INQUIRY,  NOT CAL CIV CODE  § 2932

Defendant next jumps from Cal Civ Code 2932 in insisting that no assignment need be recorded to Cal Civ Code § 2936 in insisting that there was no court error.  However, the only thing Cal Civ Code § 2936 states is "The assignment of a debt secured by mortgage carries with it the security."  Here, there was no irrefutable proof supplied in the SEC documents furnished by the

8

defendants that the Plaintiff's loan was ever transferred to the MBS trust.

Consequently Cal Civ Code § 2936 is irrelevant.

The real issue was whether the defendants complied with Cal Civ Code §

2924 which required compliance with Cal Civ Code § 2934, not 2932 nor 2936.

When the issue is reframed properly, the error becomes clear.

## F. THE PROSPECTUS AND PSA OF THE MBS TRUST ARE MERELY PROOF THAT DEFENDANT MISREPRESENTED THE TRANSFER OR THE ABILITY TO MODIFY BORROWER'S LOAN

Next, Respondents contend Plaintiffs lack standing to "enforce the

Securitization Agreements." However, Plaintiffs are not attempting to enforce the

Securitization Agreement. They are merely using the MBS trust contracts to show

plaintiffs' allegations that defendant either (1) misrepresented the loan

modification status by stating the modification was denied due to "investors"

failing to approve a modification or the plaintiff (2) was not obligated to pay the

MBS trust because there was a question as to "whom owned the loan."

Jenkins and Glaski are not apposite although the former panel affirmed

dismissal where the latter reversed dismissal in favor of the borrower.

Next, again in the footnote, Respondents contend that this was not raised

below. It is true that standing in and of itself was not a stand alone allegation.  Alll

of the facts of the case were intertwined together. However, the date of transfer

9

was at issue and raised in the record. [ ER 2:37, 39, 44-47, 175-77, 182-84, 191-93]

Moreover, these facts and additional allegations, even if this panel were to find that the allegations were not made below, demonstrate that the allegations could have been made with leave to amend as the facts supported it in the record. However, the plaintiffs were cut off in the original complaint from pleading any errors using the securitization process as proof.

Finally, it is this error that is on appeal and it is a legal error based on the law. Such issues are properly brought to the appellate panel's attention for the first time on appeal because they are pure issues of law. (*Columbia Steel Casting Co. v. Portland GE* (9th Cir. 1996) 111 F.3d 1427, 1443.)

G. ***Glaski* is Controlling Precedent In California**

Defendants attempt to dissuade the Ninth Circuit from using *Glaski*.

On February 26, 2014 the California Supreme Court rejected the defendants request to depublish Glaski. Although this court does not read a decision by the California Supreme Court by its act of depublishing or refusing to depublish a decision, it does show that *Glaski* is good law with regard to standing to challenge a foreclosure sale by the wrong party or the collection of payments by the wrong party and also that a summary dismissal based on *Nymark* is inappropriate in this

10

context, only bolstering plaintiff's position that leave to amend should be granted

in this case.

> Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. Six Companies of California v. Joint Highway District, ante, p. 180; Fidelity Union Trust Co. v. Field, ante, p. 169. Cf. (*Graham v. White-Phillips Co.* (1935) 296 U.S. 27; Wichita Royalty Co. v. City National Bank, supra, 107; Russell v. Todd, supra. This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."

*(West v. American Telephone & Telegraph Co.* (1940) 311 U.S. 223, 236-

237.)

Defendants urge this panel to follow the "majority view" of district courts.

However, there is no such thing as a "majority view." There is only the legal

principle laid out above. Because the California Supreme Court refused to

depublish the opinion, there is no reason that the federal courts should not be

required to follow *Glaski* which represents current law in this area.

The California Supreme Court held years ago that the party claiming to have

been assigned a note has the burden of proof on the issue.  See *Cockerell v. Title&*

*Ins. Co.*, 42 Cal. 284, 292-293 (1954).

There is no split in authority between Jenkins and Glaski.  The law in

Jenkins mirrored the law being advanced Glaski. The plaintiff in Jenkins failed to

11

allege any specific facts to assert that the defendants did not have any standing to foreclose.   Here, the borrowers in this action alleged specific facts to show that the defendants did not have standing to foreclose here.

## H. THE ASSIGNMENT TOOK PLACE AFTER THE MBS TRUST CLOSED SO IT WAS VOID. THUS, THE BORROWERS HAD THE RIGHT TO CHALLENGE DEFENDANTS' STANDING TO RECORD A NOTICE OF SALE AND PROCEED TO FORECLOSE.

As stated above, the MBS trust closed in 2006 and the assignment took place in 2012.  Defendants, nevertheless, narrow the issue to whether the allegations in the complaint void the NOD or DOT.  [RB 28]  However, the complaint alleged that the NOS was void.  As explained above a stranger came in as the trustee without a Substitution of Trustee being recorded in order to sell the home.  As stated above, this made the transaction void as evidenced in the record. Cal Evid Code § 640. Thus, the NOS was void. As such §3412 applies for that reason. There is nothing for the plaintiffs to restore when the NOS is void. Unlike a DOT where the entire transaction is rescinded, the void NOS only puts plaintiff back in a position where money on the loan is owed to someone.

## I. THE CHARGE OFF OF THE SECOND LIEN WAS PLACED ON THE CREDIT REPORT

Code Civ. Proc., §§ 580a, 580d, and 726, relating to fair market value, deficiency judgments, and the "one form of action" rule, were intended to prevent

multiplicity of actions, to compel exhaustion of all security before entry of a deficiency judgment, and to require the debtor to be credited with the fair market value of the security before being subjected to personal liability. Walker v. Community Bank (1974) 10 Cal 3d 729, 111 Cal Rptr 897, 518 P2d 329, 1974 Cal LEXIS 358.

When the obligation of a depositor is represented by a note secured by a mortgage or deed of trust, the one-form-of-action rule of Code Civ. Proc., § 726, prevents the bank from satisfying the obligation by exercising its right of setoff; it must exhaust the security. Bank of America v. Daily (1984, Cal App 4th Dist) 152 Cal App 3d 767, 199 Cal Rptr 557, 1984 Cal App LEXIS 1705.

A secured creditor who fails to exhaust all his security for the same debt in a single action, in contravention of the one-form-of-action rule of Code Civ. Proc., § 726, waives the balance of the security and waives any claim to the unpaid balance of the debt. Although this is a harsh sanction, the harshness flowing from application of § 726 as a sanction is necessary to uphold the statutory policy of protecting debtors' rights. Bank of America v. Daily (1984, Cal App 4th Dist) 152 Cal App 3d 767, 199 Cal Rptr 557, 1984 Cal App LEXIS 1705.

On the default by debtors on a promissory note to a bank secured by a deed of trust on California real property, the creditor bank violated the one-form-of-action rule (Code Civ. Proc., § 726, subd. (a)) by obtaining a prejudgment

13

attachment order against Korean real property owned by one of the debtors prior to commencement of an action for judicial foreclosure. The order was an action as defined by Code Civ. proc., § 22, whereby the bank recorded through a judicial proceeding an involuntary lien on additional assets of a borrower in order to increase the collateral over and above the value of the California Real Property, which was the security interest originally provided for the loan. One of the primary purposes of the one-action rule is to protect a debtor from having to defend against a multiplicity of actions. The sanction of the one-action rule applies to encourage secured creditors to exhaust their security first. Shin v. Superior Court (1994, 2nd Dist) 26 Cal App 4th 542, 31 Cal Rptr 2d 587, 1994 Cal App LEXIS 682.

The one-form-of-action rule (Code Civ. Proc., § 726, subd. (a)) applies to any proceeding or action by the beneficiary for the recovery of the debt, or enforcement of any right, secured by a mortgage or deed of trust. The only action that is permitted is foreclosure; any other "action" is a violation of the rule, which invokes severe sanctions. Shin v. Superior Court (1994, 2nd Dist) 26 Cal App 4th 542, 31 Cal Rptr 2d 587, 1994 Cal App LEXIS 682.

A violation of CCP § 726(a) results in a waiver of the creditor's security interest in the debtor's real property, but not the forfeiture of the underlying debt. Prestige Ltd. Pshp. v. East Bay Car Wash Partners (In re Prestige Partnership) (2000, 9th Cir Cal) 234 F3d 1108, 2000 US App LEXIS 29713.

14

Here, defendants characterize the charge off of the second mortgage  as "simply a declaration – for tax and accounting purposes."  However, the charge off was not merely placed on Wells Fargo's books but it was also placed on Plaintiff's credit report.

Second, according to the record Wells Fargo held both the first and the second loan so the second would have been forgiven entirely in a nonjudicial foreclosure.

The credit reporting of the charge-off was a premature negative mark on the plaintiffs' credit report and tied the borrower to Wells Fargo on the first.

This is not simply for tax and accounting purposes. Second, defendants never explain the nature of the effect as it applies in secured loan context of a home.

The issue is whether a charge-off that results in a report to the credit reporting agency is a violation of the One Action rule.  Action is more expansive than traditional filing of suit.  For example, a lis pendens was considered a violation of the One Action rule in Shin. Freezing a bank account is considered a violation of the One Action rule because the bank did not take the security first.

It is rare where a secured lender actually applies a "charge off" to a loan, if unheard of because once a bank takes a debt and charges it off, the bank no longer

15

pursues additional interest. Thus, Shin is the closest factual scenario to this case where there was a lien placed on property.

Here, because Wells Fargo held both the first mortgage and the second mortgage, Wells Fargo used the charge-off of the second mortgage as a way to place a lien on Plaintiff's credit that obliged him to pay off this lender.

Defendant completely ignores this allegation in their opposition. [RB 29-30]

Defendants cite *Nungary*.  In *Nungary*,  a lender suspended foreclosure proceedings for six months pursuant to a loan work-out plan that was prepared for the lender's review. Plaintiff sued claiming violation of the One Action rule. The court properly found that the lender did not violate the one-form-of-action rule of CCP § 726. Nungaray v. Litton Loan Servicing, LP (2011, 2d Dist) 200 Cal App 4th 1499, 2011 Cal App LEXIS 1458.

Here, the plaintiff is not alleging a violation of the One Action rule because he was in a work-out plan.  As such, *Nungary* is inapposite.

**J.  TENDER REVISITED**

Defendants contend that tender was required for cancellation of the instruments. [RB 39] No tender required for cancellation of the instruments in this case because they are void. Defendants completely sidestep this issue. *Dimmock, Lona, West, Mabry* are all California appellate opinions currently restating the law in this area.  Defendants rely on *Alvarez v Wells Fargo Bank*, *N.A*., No. 12-9661,

16

2013 US Dist LEXIS 14304 (CD Cal jan 31, 2013) for this proposition. However, that is merely a district court decision that this court is not required to follow. Indeed California appellate authority contrary to the holding in Alvarez is superior because this concerns a state law issue.

Banks do not foreclose on a deed of trust. Banks foreclose on a note. As stated above, the challenge here was that there was no MERS nominated in the loan at all.  Yet, years later defendants contend that Plaintiff's loan was transferred to a MBS trust years prior without any proof that the Note was really transferred at all. All that exists is an assignment of deed of trust recorded in 2012 in the Los Angeles County Recorder's office, years after the closing date of trust when no more loans were allowed to be transferred to the trust without risk of losing its REMIC status.  What Glaski says is that the assignment of the note to the land title was not recorded within the time frame allowed by the PSA which are the SEC's controlling documents that are mentioned in the 424(b)(5) Prospectuses on Wall Street for the trusts, which were created to benefit investors wondering what they are putting their money into and how the trust will work. Due to the fact that the assignment was recorded years afterwards in the Los Angeles County Recorder's office, with the evidentiary presumption that the date the assignment is executed is the date of the actual assignment, it simply contravenes New York trust law and is invalid, making the attempt to

17

nonjudicially foreclose, void. The trust has no standing to foreclose and that issue has always remained in the action below.

The contention that Plaintiffs do not have standing to raise this issue on the grounds a homeowner cannot challenge a PSA is a red herring. Glaski does not do that. Glaski simply uses the PSA as evidence to document the date of the MBS trust, its requirements and restrictions to show that the claim against the deed did not comply with California's Civil Code because there is evidence that the proper transfer or assignment did not occur in this particular case.

## K. FRAUDULENT MISREPRESENTATIONS THAT WERE ACTIONABLE WERE ALLEGED IN THE COMPLAINT

Defendants contend that there was no actionable misrepresentation or damage as result of any misrepresentation in this case.

In *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49 (*Lueras*) the court reversed dismissal of a complaint finding the facts supported breach of contract, fraud, and UCL violations, noting:

> The key fact alleged in the First Amended Complaint is that a mere 13 days before Bank of America foreclosed on Lueras's home, Bank of America falsely represented in writing to Lueras that no foreclosure sale would occur while Lueras was being considered for "other foreclosure avoidance programs." In so doing, Bank of America expressly and in writing informed Lueras he "will not lose [his] home during this review period." A Bank of America representative also informed Lueras the pending foreclosure sale would be postponed. Nevertheless, days later, Bank of America foreclosed on Lueras's home.

18

Like *Lueras*, the Talaies case concerned similar misrepresentations. For example, on January 13, 2011, March 4, 2011 and April 9, 2012 Wells Fargo made several written representations that Wells Fargo was working with the Talaies to assist them in the loan modification process so that they could retain homeownership. None of those letters warned that there was an investor who could deny the loan modification in the end and Wells Fargo never disclosed that it no longer owned the loan. In fact, Wells Fargo had previously modified the loan without investor approval. [ER 2:47, 48]

Reliance upon a servicer is almost always sure to exist. Unlike when a borrower is shopping for a loan, where a borrower can choose which broker he or she desires to deal with, the servicer is an entity that the borrower has no choice in the matter. The borrower must work with the servicer later assigned to his or her loan. Consequently, any representation that the servicer makes about the loan to the borrower, the borrower has no choice but to rely upon.

"Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether the plaintiff's reliance is reasonable is a question of fact.' "(*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239.)

Thus, failure to find justifiable reliance as defendants contend, would be unwarranted here.

Here, plaintiffs were emotionally distressed and facing the loss of their home, so damages were adequately pled, too.

**L. DEFENDANTS WERE THE INITIAL WRONGDOERS SO THE FACT THAT PLAINTIFFS DEFAULTED ON THE LOAN DOES NOT NEGATE STANDING**

19

Finally, Defendants contend that the plaintiffs were the initial bad actors by defaulting on their loan so they lack standing under the UCL. (RB 50). The complaint, and evidence the defendants requested to be judicially notice, does not support that conclusion.

This argument is specious. Under normal market conditions a borrower that suffers a loss of income or other hardship can simply sell the home for at least close to the amount owed on the property. Under the market conditions as they existed from 2009 through 2012, however, especially in California, the borrower ordinarily had two options, foreclosure or loss mitigation. Therefore, it is not the borrower's default that causes the problem. It is the now well-documented manipulation of the mortgage market by the very entities that have promised through TARP and the National Mortgage Settlement to work with borrowers in default.

Under the Economic Emergency Act of 2008 programs (SIG TARP), the U.S. Department of the Treasury directed the large national bank servicers to take corrective action by providing loan modifications that produced more sustainable loan payments, in order to sustain homeownership, savings, retirement and education.

California's own legislative response to the foreclosure crisis has similarly evolved in response to the explosive growth and complexity of the servicing

20

industry's loan modification operations, and is similarly rooted in the understanding that the servicer/borrower interaction in loan modification is not at all an arm's length transaction between equals. California's first statutes regulating modification required only that mortgage servicers make contact with borrowers to discuss the availability of alternatives to foreclosure. (Civ. Code, § 2923.5.) After this legislation failed to address, in the legislature's view, the avalanche of unnecessary foreclosures, the state enacted the Homeowner Bill of Rights. The Court noted the existence of the Homeowner Bill of Rights, but mistakenly concluded that it becomes effective in 2018 instead of 2013, the actual effective date.

The initial wrongdoing was by the banks which triggered the initial financial collapse and bailout.  It was the continued wrongdoing by the banks who initially obtained TARP funds on the premise that was the only way to avoid massive foreclosures.  There have been 4 million homes foreclosed upon since this disaster created by the banks own bad risk taking behavior began. The next wave promises another 4 million to 6 million homes to be foreclosed on by 2018, with a new wave of HELOC defaults.

The homeowners like Mr. and Mrs. Talaie who applied for the loss mitigation assistance set up by the government are not the initial wrongdoers in this scenario.

21

The plaintiffs like others took proactive steps to mitigate any damages, and applied then waited for their loan modification.  The help they were promised to sustain homeownership.  The only entity gaining from that type of relationship is the bank, not the homeowner.

"For servicers, the true sweet spot lies in stretching out a delinquency without either a modification or a foreclosure. While financing advances is a large expense for servicers, one they will want to end as soon as possible, late fees and other default-related fees can add significantly to a servicers' bottom line, and the longer a homeowner is in default, the larger those fees can be. The nether-world status between a foreclosure and a modification also boosts the monthly servicing fee (because monthly payments are not reducing principal) and slows down servicers' largest non-cash expense: the amortization of mortgage servicing rights (because homeowners who are in default are unlikely to prepay via refinancing). Finally, foreclosure or modification, not delinquency by itself, usually triggers loss recognition in the pool under accounting rules. Waiting to foreclose or modify postpones the day of reckoning for a servicer." (Diane E. Thompson, *Foreclosing Modifications: How Servicer Incentives Discourage Loan Modifications* (2011) 86 Wash L. Rev. 755, 777)

Finally, no reason has been suggested as to why Wells Fargo or US Bank should not be held liable for breaching its promise, committing fraud, or acting in

a fraudulent manner towards these borrowers who seemingly made a reasonable and responsible request and believed at the time that the servicer and purported lender was dealing with them in good faith. *Riverisland Cold Storage v Fresno Madera Credit*, 55 Cal.4th 1169, 2013.

　　False promises like those made to Mr. and Mrs. Talaie lulled thousands of unsuspecting families into a foreclosure they would have otherwise had the chance to fight. It resulted in children being uprooted from their schools, left defenseless, some without any personal possessions, and families becoming instantaneously homeless.  The law surely provides legal redress for such conduct. Wells Fargo deceitfully took approximately $20,000.00 from the plaintiffs using the loan modification system set up to save homeowners as a debt collection practice.  They should be held liable because the harm was so magnificent and palpable. There is nothing speculative about that. The fact that a jury or fact finder may have to place a price tag on that type of harm is not new to the judicial system. Juries have been doing this for centuries for contracts where there was no liquidated damages clause, for loss of homes, condemnation, personal injury. It is actually the rare case where the harm is given in specific dollars and cents.  Thus, the finding of damages to be too speculative just does not coincide with precedent or the reasonably foreseeable affects when this type of promise is made and broken.

This reasoning would have the undesirable effect of giving the banks a free pass from being held accountable for any and all harm inflicted upon the homeowner that was foreclosed upon by the very financial institution that helped to create this financial crisis.

In the UCL context, the plaintiffs would be entitled to restitution and injunctive relief.

As stated in the opening brief, the fact that Wells Fargo sent a check to the Plaintiffs after litigation started does not take away Article III standing.  Article III standing is measured at the time the lawsuit is filed.  The law is well established that to do otherwise would force plaintiffs into involuntary settlements. *Wallace v Geico General Ins, Co*, 183 CalApp4th 1390, 1401 (2010).

### III. CONCLUSION

Placing borrowers in a Red Queens race like this has shut equal access to the courts to many borrowers with legitimate grievances.  Half way through the crises and those doors have not opened nearly enough.  For the reasons stated herein, this Court should reverse the district court's decision in dismissing this complaint; denying leave to amend; and award costs thereon.

Dated:  March 5, 2014                    Respectfully Submitted,
                                         LAW OFFICES OF LENORE ALBERT

/s/ Lenore Albert_____

LENORE L. ALBERT, ESQ.
*Counsel for Plaintiffs-Appellants,*
*Mohammad Ali Talaie and Rosa W. Talaie*

## STATEMENT OF RELATED CASES

Plaintiffs/Appellants believe that the following cases pending in this Court would be deemed related pursuant to Ninth Circuit Rule 28-2.6.

*Ballard v Bank of America*, Case No. 14-55334.

Dated:  March 5, 2014                    Respectfully Submitted,
                                         LAW OFFICES OF LENORE ALBERT


                                         */s/ Lenore Albert*_____

                                         *LENORE L. ALBERT, ESQ.*
                                         *Counsel for Plaintiffs-Appellants,*
                                         *Mohammad Ali Talaie and Rosa W. Talaie*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with enlargement of brief size permitted by the Ninth Circuit Rule 28-4.  The brief's type size and type face comply with Federal Rules of Civil Procedure, rule 32(a)(5) and (6). This brief has 5,740 words not including this Certificate and excluding the portions exempted by the Federal Rules of Appellate Procedure, rule 32(a)(7)(B)(iii), if applicable.

Dated:  March 5, 2014                 Respectfully Submitted,
                                      LAW OFFICES OF LENORE ALBERT


                                      */s/ Lenore Albert*_____
                                      *LENORE L. ALBERT, Esq.*
                                        *Counsel for Plaintiffs-Appellants, Mohammad Ali Talaie and Rosa W. Talaie*

### *CERTIFICATE OF SERVICE*

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 5, 2014.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Attorney General's Office:
Appellate Coordinator
Office of the Attorney General
Consumer Law Section
300 S. Spring Street
Los Angeles, CA 90013-1230

The Hon. Dolly M. Gee
US District Court
310 N. Spring Street, Crtm 7
Los Angeles, CA 90012-4701

    Dated: March 5, 2014

                                        /s/ Lenore Albert_____
                                            Lenore Albert

28